**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**NEAL HENDERSON ROSAMOND**             **PLAINTIFF**

v.             **CIVIL ACTION NO. 1:22-cv-97-JMV**

**COMMISSIONER OF
SOCIAL SECURITY**             **DEFENDANT**

## ORDER

This matter is before the court on Plaintiff's complaint [1] for judicial review[1] of the Commissioner of the Social Security Administration's denial of an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The undersigned held a hearing on April 4, 2023 [19]. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. Having considered the record, the administrative transcript, the briefs

---

[1] The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained:
> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).
    Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

of the parties, the oral arguments of counsel and the applicable law, the undersigned finds the Commissioner's decision is supported by substantial evidence and that said decision should be affirmed.

## Statement of the Case

On July 29, 2020, Plaintiff filed for DIB under Title II of the Social Security Act and alleged a disability onset date of May 9, 2020. Tr. at 10. The application was denied initially and upon reconsideration. Tr. at 10. Plaintiff filed a timely request for a hearing. The Administrative Law Judge ("ALJ") held a telephonic hearing on December 7, 2021, and issued an unfavorable decision in this cause on November 5, 2021. Tr. at 7, 10-26. The Appeals Council denied Plaintiff's request for review on May 19, 2022, thereby making the ALJ's decision the final decision of the Commissioner and the Social Security Administration for purposes of judicial review under the Social Security Act. Tr. at 1-3.

The ALJ evaluated Plaintiff's claims pursuant to the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of May 9, 2020. Tr. at 12, Finding 2. At step two, the ALJ found that the Plaintiff had the following "severe" impairments: intervertebral disc syndrome of the cervical spine, bilateral lower extremity femoral nerve radiculopathy, intervertebral disc syndrome of the thoracolumbar spine, bilateral sciatic nerve radiculopathy, degenerative joint disease of the right knee, degenerative arthritis of the right ankle, and obesity (20 CFR 404.1520(c). Tr. at 12, Finding 3. At step three, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or equaled the criteria of an impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings). Tr. at 16, Finding 4.

The ALJ then assessed Plaintiff's RFC and found that he has the ability to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a). Tr. at 16-25, Finding 5.

At step four, the ALJ found that Plaintiff is able to perform his past relevant work. Tr. at 19, Finding 6. In particular, Plaintiff's testimony at the hearing was that he had past relevant work in the military which he described as follows in response to questions by his attorney:

> Q So, on the last job in the military, how much did you have to lift on a regular basis?
>
> A Not much. It was mainly just office work. During the week, you know, just basic office work on the computer. It was – required some cleaning. It might be some lifting, or whatever, if I had to, which wouldn't be much.
>
> Q Let's be specific. Was it 20 pounds or less or somewhere in that area or ten?
>
> A Right, it was about – it was 20 pounds or less.
>
> Q Okay. And how much standing was in that job?
>
> A It wasn't much standing. I mean, it was some. I'd say probably 40% of it, or 20 – 30% of it was, you know, standing or walking. But for the most part it was sitting.
>
> Q All right, for the purpose of vocational expert, what title did that job have?
>
> A The title was a Battalion – or Battalion S4 NCO, which basically with supply and logistics.
>
> Q All right. And how long did you do that job?
>
> A I did that job from 2000 – 2006 to 2018, when I retired. So, that's what 14 years.

Tr. at 51-52.

The relevant exchange continued later:

> Q Okay. Okay. And if you had the opportunity to go back to that job could you do it?
>
> A No, sir.
>
> Q If you had the opportunity to go back to your last job the military –
>
> A No, sir, I couldn't do it.
>
> Q – [INAUDIBLE] ask you that, why could you not do the job you had in the military?
>
> A Because I hurt so bad. Now, even if I'm sitting, trying to work on the computer and stuff, my fingers, I mean they even burn, on my right hand. And then, you know, plus having to lean forward or lean back it – it – I mean my back and my neck and – and just sitting there I just can't sit there for probably 15 minutes and not have to get up and stretch or whatever, or go lay down, because I just hurt so bad.

Tr. at 55.

>Q Okay. Now, you mentioned sitting at a computer, was – was that a great amount of the job back with the military in 9 – '18 and before –
>
>A My last years, right, right. My last years it was, correct.

Tr. at 58.

>Q On the previous job, how many hours in an average day, were you on the computer?
>
>A My last job?
>
>Q With the military?
>
>A Probably – oh with the military? Oh, that was probably maybe 60, 70% of the time, 80%, something like that during the weekday.

Tr. at 60.

>Plaintiff was also asked to clarify his job in the military by the ALJ herself.
>
>Q Well, what – what was your – what was your rank in the National Guard when you retired, sir?
>
>A Your Honor, I – was a sergeant first class. And I was basically – you can put my job title basically as a supervisor in a way. Because I was over like four or five supply sergeants that were in our battalion.

Tr. at 75.

>Then, on specific examination by the VE, Plaintiff elaborated on PRW duties as follows:
>
>Q …were you working in supply? You said in supply?
>
>A In logistics, correct.

Tr. at 75.

>Q Did you have to like, procure or obtain supplies and then like you said, you'll just – you had to put them out in the areas of – were – was this overseas and stateside as well? You said you had –
>
>A I did –
>
>Q [INAUDIBLE] equipment.
>
>A – right, I was – I was – right. I was basically in control of if there were any supplies that needed, you know, I would put it out for my supply sergeants what they needed to get this and that. And I also coordinated like for drills and stuff like that, you know, making sure we had food, making sure we had ammo, fuel, making sure our barracks, we had all the barracks and everything. That – that right there was pretty much my job.

4

> Q Would you consider that a general supply officer? Would you say that was similar to what you did [INAUDIBLE] whatever?
>
> A Pretty much.
>
> Q Okay. And –
>
> A Right. Pretty – pretty much.
>
> Q And you sat down most of the time?
>
> A Correct.

Tr. at 76-77.

Following the foregoing questioning of Plaintiff, the VE then testified that Plaintiff's PRW "would be a general supply officer in the nonmilitary role – it's considered a manager, procurement services, but that is under the military service industry…." The VE then went on to explain that the DOT listing for Plaintiff's PRW was #162.167-022 with an SVP of 7 and a sedentary exertional level. DOT # 162.167-022 is the descriptor for General Supply Officer/Manager, Procurement. Tr. at 77.

Notably, Plaintiff's counsel had no objection to the VE's testimony and himself, when questioning the VE, described Plaintiff's job in the military as a "supply officer." Tr. at 78.

Following the hearing, the ALJ rendered his decision, stating, with reference to Plaintiff's PRW discussed at the hearing:

> The claimant is capable of performing his past relevant work as a General Supply Officer/Manager, Procurement. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). The vocational expert classified the claimant's past work performed in the past fifteen years as follows: General Supply Officer/ Manager, Procurement Services (Dictionary of Occupational Titles (DOT) 162.167-022, sedentary exertional level, skilled, SVP 7) … The vocational expert testified that her testimony was consistent with the Dictionary of Occupational Titles. Pursuant to *Social Security Ruling 00-4p*, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The undersigned further finds the claimant, with the determined residual functional capacity for the full range of

5

>sedentary work, is capable of performing his past relevant work as a procurement services manager, which was sedentary in exertional demand.

Tr. at 25.

Because the ALJ found that Plaintiff was able to perform his past work, the ALJ did not consider step five. Accordingly, the ALJ found Plaintiff not disabled and denied his application for period of disability and DIB. Tr. at 25-26, Finding 7.

**Issue on Appeal**

In his brief on appeal, Plaintiff's counsel acknowledges that in most cases at step 4, the ALJ may consider the testimony of a VE, who offers expertise concerning how PRW is *generally* performed in the national economy. 20 C.F.R. § 404.1560(b)(2); *Bryant v. Astrue*, No. CIV.A. 09-1499, 2010 WL 3541097, at *5 (W.D. La. July 30, 2010), *report and recommendation adopted*, No. CIV.A. 09-1499, 2010 WL 3541092 (W.D. La. Sept. 3, 2010)). But he now argues, *for the first time,* that his client's PRW in the military was actually a "composite job". A "composite job" is a job that has "significant element of two or more occupations and, as such, has no counterpart in the [Dictionary of Occupational Titles (DOT)]." See SSR 82-61, 1982 WL 31387, at *1. Such situations will be evaluated according to the particular facts of each individual case, rather than as the job is generally performed in the national economy, as described in the DOT. That being the case, Plaintiff argues his ability to return to his PRW would have to be assessed on the particulars of how he had *actually* performed it. And, in Plaintiff's case, as he actually performed it, a light or higher exertional level was required. This of course exceeded his assigned sedentary RFC; thereby, according to Plaintiff, the ALJ's decision is erroneous.

In this case, counsel's new assertion that his client's PRW was a composite job is based on two alternative rationales: first, he asserts it was composite because there was a difference between

6

the exertion level required of him to actually perform the job (light or higher) and what the DOT says the exertional level of that job is when generally performed in the national economy (sedentary). *See* Pl.'s Br. at 12 ("In this case, since Mr. Rosamond was required to perform portions of his job in the medium and even into the heavy range, it was a composite job and he could not return to it under the ALJ's sedentary RFC.").

Alternatively, counsel for Plaintiff relies on 2 one-page documents from the "E-file" which either his client and/or another authored. Plaintiff asserts that while these documents are part of the record, "apparently" neither the ALJ nor VE reviewed them, and counsel for Plaintiff asserts this "apparent" omission is significant because those documents provide a description of Plaintiff's relevant job duties in a manner that "varied greatly from [] Mr. Rosamond's description of this job" given under oath at the hearing. *See* Pl.'s Br. at 11-12. Indeed, Counsel contends these two pages make Plaintiff's PRW a "composite" job.

Those particular documents, 3E and 13E state in relevant part as follows: that Plaintiff lifted and carried weapons; lifted 60 pounds at heaviest; frequently lifted 15 pounds; supervised 4 sergeants; used the computer and phone; did physical training; walked for .5 hours per day; traveled; shot weapons; handled, grabbed, or grasped objects for 6 hours per day; stood for 4.5 hours per day; reached for 6 hours per day; sat for 4 hours per day; and wrote, typed, or handled small objects for 2 hours per day. Tr. at 218. Also, that "every day work consisted of computer work[,] some cleaning[,] over logistics + supply[,] conducted inspections of units. A lot of driving to units. Went to drill once a month + summer camp. [Plaintiff] drew all the buildings for every away drill + summer camp completed missions on the field during summer camp + drills." Tr. at 283.

**Discussion**

To begin, the VE identified the plaintiff's PRW with the military as having a counterpart position in the DOT – specifically DOT # 162.167-022 – that would be generally performed at the sedentary level, and Plaintiff's counsel did not contest this testimony, or classification in any fashion. Tr. at 77-78. It is the responsibility of Plaintiff to press any disagreement of the characterization of his PRW as a non-composite job on cross-examination. *See Holland v. Colvin*, No. 3:14-cv-2694-K-BH, 2015 WL 5437727, at *13 n.4 (N.D. Tex. Aug. 31, 2015) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990); *see also Bailey v. Comm'r of Soc. Sec.*, Civil Action No. 4:19-cv-168-RP, 2020 WL 4318761, at *2 (N.D. Miss. July 27, 2020) (listing a number of cases within the Fifth Circuit where district courts have held that "a claimant who disagrees with the VE's characterization of [his] PRW is obligated to raise that issue and press it on cross-examination or else the issue is waived."). Additionally, "[c]onflicts in evidence are for the Secretary and not for the courts to resolve." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citation omitted). The hearing testimony, unchallenged by Plaintiff's counsel, adequately supports the ALJ's determination of Plaintiff's PRW.

Moreover, there is no merit to Plaintiff's argument that his PRW is a composite job because, as actually performed, a different exertional level was required from that identified in the applicable DOT counterpart specified by the VE. No legal authority is provided for this position by Plaintiff, and the court is aware of none. On the contrary, this Court rejected such an argument in *Baines v. Kijakazi*, No. 4:21-cv-86-DMB-JMV, 2022 WL 2057735, at *4-5 (N.D. Miss. June 7, 2022) ("Substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work as an office manager as that position is generally performed, and any inability to perform the specific requirements of that job as Plaintiff actually performed does

not detract from the ALJ's step four finding."). Even if a claimant cannot perform excessive functional demands and/or duties actually required in said claimant's PRW, if the claimant can perform the functional demands and duties as generally required by employers throughout the economy, then the claimant should be found "not disabled." *See* SSR 82-61, 1982 WL 31387, at *2; *see also Leggett v. Chater*, 67 F.3d 558, 564-65 (5th Cir. 1995) ("The mere inability of a claimant to perform certain 'requirements of his past job does not mean that he is unable to perform "past relevant work" as that phrase is used in the regulations.'").

Finally, the assertion that the 2 pages referenced prior from the E-File were "apparently" unknown to the ALJ and/or the VE, simply because they were not specifically discussed by anyone – including Plaintiff's counsel – at the subject hearing, is not only pure speculation but contradicts the testimony of the VE. The VE, at the hearing, confirmed in response to questioning by the ALJ that the materials were made available to the VE before the hearing to review and she had done so. Tr. at 74. But, even leaving that aside, it is clear that the VE was present for Plaintiff's own sworn testimony concerning his PRW, and that testimony bears little difference from, and is in fact in some respects more elaborate, than the relatively scant information on the 2 pages of the E-File discussed above. At the hearing, Plaintiff clearly explained his role in the military, including reference to drills, and the VE found this particular position, albeit military, did have a civilian DOT counterpart (DOT # 162.167-022). While there is little doubt that there are differences between the military role and the civilian one specified, mere difference in duties does not constitute a composite job. *See, e.g., Robert R. v. Comm'r of Soc. Sec. Admin.*, 1:19-cv-05333-ELR, 2021 WL 7708407 (N.D. Ga. Mar. 16, 2021) (rejecting Plaintiff's argument that his prior military job was composite and did not have a civilian DOT

9

counterpart because of "unique physical and mental demands of performing his past position while part of the military").

And there has been no showing here that the differences that do exist are so significant that they meet the definition of a composite job. On the contrary, the VE in this case was, in fact, able to identify a counterpart DOT position, which, by definition, would not have been possible had this been a composite job.

## Conclusion

For the reasons stated above, the Court finds that the ALJ's March 4, 2022, decision is affirmed.

**SO ORDERED** this, the 3rd day of May, 2023.

/s/ Jane M. Virden
United States Magistrate Judge